UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

MAY 3 1 2006

MICHAEL N. MILBY, CLERK OF COURT

| | |
|---|---|
| THE MEN'S WEARHOUSE, INC., TMW MARKETING COMPANY, INC., STARBUCKS CORPORATION, and STARBUCKS U.S. BRANDS L.L.C., | §<br>§<br>§<br>§<br>§ |
| Plaintiffs, | §<br>§ |
| v. | §<br>§ |
| EXCLUSIVE GIFT CARDS, NIU TECH L.L.C., and JOHN DOES NO. 1-10, | §<br>§<br>§ |
| Defendants. | § |

Civil Action No.: H-06-1853

## ORIGINAL COMPLAINT

For their complaint, Plaintiffs allege and aver as follows:

### NATURE OF ACTION

1.     Plaintiffs bring this action to recover damages and to obtain an injunction and other equitable relief for violations of the Lanham Act, the Copyright Act and state unfair competition laws committed by Defendants through their unlawful use of Plaintiffs' trademarks, copyrights and trade dress, and false advertising in connection with Defendants' promotional offers to consumers via mass email distributions and their interactive Web sites.

### THE PARTIES

2.     Plaintiff The Men's Wearhouse, Inc. ("TMW Inc.") is, and at all times material hereto has been, a commercial organization organized and existing under the laws of Texas. TMW Inc. has an office at 5803 Glenmont, Houston, Texas 77081.

3.     Plaintiff TMW Marketing Company, Inc. ("TMW Marketing") is, and at all times material hereto has been, a commercial organization organized and existing under the laws of

California.  TMW Marketing has an office at 40650 Encyclopedia Circle, Fremont, California 94538.  TMW Marketing is a wholly owned subsidiary of TMW Inc. (collectively, "TMW").

4.     Plaintiff Starbucks Corporation is, and at all times material hereto has been, a corporation organized and existing under the laws of the State of Washington, with its principal place of business located in Seattle, Washington.  Since 1971, it has continuously done business under the trade names "Starbucks," "Starbucks Coffee Company" and "Starbucks Coffee." Ownership of the Siren Logo® copyright is vested in Starbucks Corporation.

5.     Plaintiff Starbucks U.S. Brands L.L.C. ("U.S. Brands") is, and at all times material hereto has been, a corporation organized and existing under the laws of the State of Nevada, with its principal place of business located in Minden, Nevada.  U.S. Brands is a wholly owned subsidiary of Starbucks Corporation.  Ownership of the Starbucks® trademarks described in this Complaint is vested in U.S. Brands.  Starbucks Corporation is a licensee of such trademarks.  Plaintiffs Starbucks Corporation and Starbucks U.S. Brands L.L.C. are hereinafter referred to collectively as "Starbucks."

6.     On information and belief, Defendant Exclusive Gift Cards is a business entity of unknown character transacting and doing business in Texas and elsewhere throughout the United States.  On information and belief, Exclusive Gift Cards has an office at 13900 Jog Road, Suite 203-251, Delray Beach, Florida 33446.  Exclusive Gift Cards is subject to the Court's jurisdiction and is using trademarks, copyrights and trade dress that infringe and dilute Plaintiffs' trademarks, copyrights and trade dress, is unfairly competing with Plaintiffs, and is causing injury to Plaintiffs' business reputations.

7.     On information and belief, Defendant Niu Tech L.L.C. is a limited liability company organized and existing under the laws of the State of Florida, which transacts and does

business in Texas and elsewhere throughout the United States.  On information and belief, Niu

Tech L.L.C. has offices at 6001 Broken Sound Parkway, Suite 200, Boca Raton, Florida 33487;

13900 Jog Road, Suite 203-251, Delray Beach, Florida 33446; 123 N. Congress Avenue #351,

Boynton Beach, Florida 33426; and 14545 J Military Trail #189, Delray Beach, Florida 33484.

On information and belief, Niu Tech L.L.C. does business as Exclusive Gift Cards and Your

Smart Rewards and has registered several domain names, including but not limited to

<exclusivegiftcards.com> and <yoursmartrewards.com>.  Niu Tech L.L.C. is subject to the

Court's jurisdiction and is using trademarks, copyrights and trade dress that infringe and dilute

Plaintiffs' trademarks, copyrights and trade dress, is unfairly competing with Plaintiffs, and is

causing injury to Plaintiffs' business reputations.

8.     On information and belief, Defendants John Does No. 1-10 are business entities

of unknown character and individuals of unknown identity transacting and doing business in

Texas and elsewhere throughout the United States.  On information and belief, John Does No. 1-

10 have offices in Florida.  John Does No. 1-10 are subject to the Court's jurisdiction and, on

information and belief, have engaged in, and continue to engage in, the unlawful conduct alleged

herein.  Plaintiffs are presently unaware of the true names and identities of John Does No. 1-10.

<u>JURISDICTION AND VENUE</u>

9.     This Court has jurisdiction of this action pursuant to 15 U.S.C. § 1121, and 28

U.S.C. § 1331, § 1338, and § 1367(a).

10.     Venue is proper under 28 U.S.C. § 1391(b) and (c).

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### Trademarks Owned by TMW Inc. and TMW Marketing

11.     Since 1973, TMW Inc. has operated as a retailer of men's and boys' clothing in the United States. With hundreds of stores throughout the United States, including in this judicial district, TMW Inc. is the number one discount retailer of men's clothing in North America.

12.     TMW adopted in 1973, and continues to use, THE MEN'S WEARHOUSE as a service mark. The mark was registered with the United States Patent and Trademark Office on January 21, 1992, for use with retail clothing store services. The registration number for this trademark is 1,672,903. This registration is incontestable pursuant to 15 U.S.C. § 1065.

13.     TMW also adopted and continues to use THE MEN'S WEARHOUSE as a trademark. The trademark was first used as early as 1980. The mark was registered with the United States Patent and Trademark Office on January 24, 1989, for use with clothing. The registration number for this mark is 1,521,918. This registration is incontestable pursuant to 15 U.S.C. § 1065.

14.     TMW owns a registration for THE MEN'S WEARHOUSE in the State of Texas for advertising. The registration number for this mark is 1,176,595,916. TMW also owns a registration for THE MEN'S WEARHOUSE in the State of Texas to identify clothing. The registration number for this mark is 1,176,896,116. TMW owns a registration for THE MEN'S WEARHOUSE in the State of Texas for jewelry. The registration number for this mark is 1,176,596,016. Additionally, TMW owns a registration for THE MEN'S WEARHOUSE in the State of Texas to be used in connection with leather goods. The registration number for this mark is 1,176,595,816.

15.     TMW also owns a registration for THE MEN'S WEARHOUSE issued by the United States Patent and Trademark Office on August 8, 2000, for use with jewelry, namely, tie tacks, tie clips, cufflinks, wallets and clothing.  This mark was first used as early as 1995.  The registration number for this mark is 2,374,245.  This registration is incontestable pursuant to 15 U.S.C. § 1065.

16.     TMW also owns a registration for MEN'S WEARHOUSE MW (& Design) issued by the United States Patent and Trademark Office on May 1, 2001, for use with jewelry, including tie tacks, tie clips, cufflinks, wallets and clothing.  This mark was first used as early as 1999.  The registration number for this mark is 2,448,040.

17.     TMW also owns a registration for MEN'S WEARHOUSE MW (& Design) issued by the United States Patent and Trademark Office on July 11, 2000, for use with men's clothing, namely, shirts, sweaters, suits, pants, and sportswear, including woven shirts, knit shirts, knit sweaters, casual pants, cotton slacks, sport jackets, as well as with retail clothing store services.  The registration number for this mark is 2,367,145.

18.     TMW is the owner of all rights, title, and interest in the above marks (the "TMW Marks").

19.     In addition to the TMW Marks, TMW also owns all rights, title, and interest in and to all other intellectual property associated with their products and services, including, without limitation, the trade dress used with their products and services (the "TMW Trade Dress").  The TMW Trade Dress appears in TMW's advertisements and promotional materials for their products and services in various media, including, without limitation, on their official Web site, <menswearhouse.com>.  Consumers can browse through TMW's Web site to view

and find information about TMW's products and services, or purchase TMW's products and services. Gift cards are also available for sale on TMW's Web site.

20.     The TMW Trade Dress is inherently distinctive, or alternatively, has acquired secondary meaning, and serves to identify and indicate the source of TMW's products and services to the consuming public. Through TMW's extensive use and promotion of the TMW Trade Dress, such trade dress distinguishes TMW and its products and services from those of other businesses and distinguishes the source and origin of TMW's products and services.

21.     There is a substantial demand for products and services associated with the TMW Marks and TMW Trade Dress. Therefore, the goodwill and right to sell products with these marks and trade dress are valuable commercial property rights. The TMW Marks and TMW Trade Dress are extremely well-known and respected by consumers, and represent TMW's commitment to providing high quality products and services.

22.     Both the TMW Marks and TMW Trade Dress are famous and inherently distinctive or, alternatively, have acquired secondary meaning.

23.     TMW advertises its products and services throughout the United States extensively and frequently by a variety of media, including television, radio and the Internet, through its official Web site, <menswearhouse.com>. TMW spends a substantial amount of money promoting the TMW Marks and TMW Trade Dress.

24.     TMW's advertisements are broadcast and published within this district and throughout the United States.

25.     The TMW Marks and TMW Trade Dress, and the goodwill associated with them, are of inestimable value to TMW.

26.     The TMW Marks and TMW Trade Dress have significance in the minds of the purchasing public as denoting products and services coming from TMW.

## Starbucks, Its Business and Its Trademarks

27.     Starbucks is the best-known vendor of specialty coffees in America today. Beginning in 1971 as a single, Seattle-based coffee shop, Starbucks has grown to more than 11,000 retail locations throughout North America and in 37 foreign countries.  Starbucks retail stores carry a full line of premium coffee, espresso-based beverages and teas, blended beverages, 40 different varietals of Starbucks® brand roasted coffees, and other Starbucks-branded merchandise.  Starbucks also supplies premium, fresh-roasted coffees to hundreds of restaurants and other accounts throughout the world.

28.     The key to Starbucks' phenomenal success is the consistent high quality and strong reputation of its fresh-roasted specialty coffees, brewed coffee and espresso beverages and the other products and services it provides.  Starbucks has a reputation for excellence, particularly in the area of roasted coffees and coffee beverages, and is widely recognized for its knowledgeable staff and superior service.

29.     For 34 years, Starbucks has continuously used the Starbucks® and Starbucks Coffee® trademarks (collectively, the "Starbucks Mark") and iterations of the famous Siren Logo® both to identify its goods and services and as the name of the company.  The Starbucks Mark and the Siren Logo® are the subject of approximately 60 trademark registrations issued by the United States Patent and Trademark Office, and have been registered in 134 foreign countries.

30.     The current version of the Siren Logo® has been used continuously by Starbucks since 1992. The Siren Logo® consists of a circular design, the exterior region of which is green

and within which appear the words "STARBUCKS COFFEE" in white block lettering, separated by two white stars. The center portion of the design consists of a black and white drawing of the head and torso of a siren (*i.e.*, a mermaid) with long flowing hair, adorned by a crown. In addition to being registered as a trademark with the United States Patent and Trademark Office, the Siren Logo® is protected by copyright laws and has been registered with the United States Copyright Office as Reg. No. VA 875-932.

      31.     Starbucks has spent substantial time, effort and money advertising and promoting the Starbucks Mark and the Siren Logo® throughout the United States and elsewhere:

      (a)     Starbucks owns, or operates through affiliates and licensees, more than 7,900 retail stores in North America. In addition, there are currently over 3,000 Starbucks retail stores located in 37 foreign countries. These stores—which are visited by approximately 40 million customers per week—carry a full line of coffee, cappuccino, espresso-based beverages and teas brewed and served on premises; blended beverages; 40 different varieties of Starbucks® brand roasted coffees; baked goods and confections; and other branded merchandise. Each store prominently displays the Starbucks Mark and the Siren Logo® on exterior signage and at multiple locations within the store.

      (b)     Starbucks has licensed Host Marriott Services Corporation to operate approximately 270 coffee kiosks ("Starbucks Kiosks") in major airports and other locations in the United States and Canada. The Starbucks Kiosks sell Starbucks® brand coffees and other beverages prepared on site in accordance with strict beverage preparation and quality control procedures established by Starbucks, which are intended to maintain the high and consistent standards imposed by Starbucks on its own stores. The Starbucks Kiosks utilize the Starbucks

Mark and the Siren Logo® in a manner similar to that employed in Starbucks-owned retail outlets.

        (c)     Starbucks has entered into similar license agreements with major U.S. supermarkets, such as Safeway, Fred Meyer, SuperTaget and Albertsons, through which Starbucks locations are operated within the supermarkets. These locations prominently display the Starbucks Mark and the Siren Logo®.

        (d)     Starbucks sells its coffee to and through hundreds of other Authorized Resellers, including restaurants, airlines (including United Airlines), sport and entertainment venues, motion picture theaters, hotels (including all corporate-owned Sheraton and Westin Hotels in the U.S., which offer Starbucks® coffee in-room) and cruise ship lines. Starbucks provides these accounts with approved equipment and with quality standards and procedures for brewing and serving Starbucks® coffee. Starbucks permits these accounts to use the Starbucks Mark and the Siren Logo® on their menus and in certain promotional materials.

        (e)     Starbucks coffees are served from dedicated retail areas located in over 590 Barnes & Noble Bookstores ("B&N Cafes"). B&N Cafes serve Starbucks® brand coffee and espresso beverages brewed and served on site in accordance with quality standards and procedures established by Starbucks, and prominently display the Starbucks Mark and the Siren Logo®.

        (f)     Starbucks distributes several exclusive coffee blends, Starbucks® brand ice cream, bottled Frappuccino® and Starbucks DoubleShot® coffee drinks at grocery stores and similar retailers nationwide. Each of these products prominently bears the Starbucks Mark and the Siren Logo®.

(g)   Starbucks operates an Internet Web site (<www.starbucks.com>) that generates, on average, 500,000 "hits" from visitors per week.  The Starbucks Mark and the Siren Logo® are incorporated into many of the individual "pages" within this site, and are displayed on much of the branded merchandise offered for sale on-line.

32.   In addition, Starbucks offers reloadable multi-use cards—Starbucks Cards—for sale to the public through a variety of channels including but not limited to Starbucks-owned retail facilities, Starbucks' Web site <starbucks.com>, Starbucks-licensed stores, authorized retailers (such as grocers and drug stores) and authorized Web sites such as Shutterfly.com, sendoutcards.com and touchpoint.com.  Each of these channels of distribution is authorized by Starbucks and is in strict compliance with its policies regarding distribution of Starbucks Cards.

33.   As a result of the foregoing and similar use and promotion, the Starbucks Mark and the Siren Logo® have become famous and highly distinctive trademarks.

Defendants' Unlawful Activities

34.   On information and belief, Defendant Exclusive Gift Cards is a company that offers its products and services to the public through mass promotional email campaigns and several interactive Web sites under the domain names <exclusivegiftcards.com>, <yoursmartrewards.com>, <dealofday.com>, <rewardhits.com>, <totallyfreestuff.com>, <clipfire.com>, <stuffallfree.com>, <zonefreestuff.com>, and <ConsumerRewardZone.com>, among others.  On information and belief, Defendant Niu Tech L.L.C. does business as Exclusive Gift Cards and Your Smart Rewards, among other names.

35.   On information and belief, Defendants John Does No. 1-10 are or were affiliated with Defendants Exclusive Gift Cards and Niu Tech L.L.C. and engage in, or have engaged in, the same or similar business practices.

36.     Long after Plaintiffs' adoption and use of their respective famous trademarks, and without Plaintiffs' consent, Defendants have unlawfully used the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® in commerce via mass email distributions and, on information and belief, various Web sites that they operate and other Web sites with which they are affiliated.

37.     In particular, Exclusive Gift Cards has used the TMW Marks and TMW Trade Dress in connection with its "Men's Warehouse Online Winter Savings" email promotion, whereby it offered consumers, via mass email distribution and interactive Web sites, a purportedly "free" $250 "Men's Wearhouse Gift Card." The mass emails display the TMW Marks in the text, the subject line, and the address for the sender of the email. The email links to a Web page on an interactive Web site, at the domain name <exclusivegiftcards.com>, which displays both the TMW Marks and TMW Trade Dress, and looks substantially and confusingly similar to the <menswearhouse.com> Web site.

38.     Exclusive Gift Cards has also used the Starbucks Mark and the Siren Logo® in connection with its "free" "$250 Starbucks® Gift Card," whereby it offered consumers, via mass email distribution and interactive Web sites, a purportedly "free" $250 "gift card" for Starbucks® beverages, food and merchandise. The mass emails display the Starbucks Mark in the subject line and/or in the address for the sender of the email. In addition, the text of the email as well as the linked Web pages located within interactive Web sites, including but not limited to <yoursmartrewards.com> and <exclusivegiftcards.com>, display both the Starbucks Mark and the Siren Logo®.

39.     In fact, the promised cards are not "free." Hidden in fine print is the requirement that the consumer seeking the "free" gift provide personal information, respond to lengthy

questionnaires and enroll in numerous promotional offers relating to various other companies, many of which require payment of a fee. Therefore, Exclusive Gift Cards' advertisements which state that its gift cards are "free" are false, as these allegedly "free" gift cards require the payment of money as well as the completion of numerous other requirements. In addition, on information and belief, even after a consumer provides his personal information, responds to the questionnaire, and enrolls in the other unrelated promotional offers, Exclusive Gift Cards rarely actually delivers a gift card to the consumer.

40.     Both "Men's Wearhouse" and Starbucks are well-known companies, with famous trademarks, that offer popular products and services. On information and belief, Exclusive Gift Cards knew that featuring the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® in their advertisements would increase consumer interest in their promotions, and other products and services.

41.     TMW itself offers for sale to the public gift cards through a variety of channels, including its own retail stores, its official Web site, <menswearhouse.com>, and in affiliation with two other authorized Web sites, <giftcertificates.com> and <incentone.com>.

42.     Similarly, Starbucks offers Starbucks Cards for sale to the public through a variety of channels including but not limited to Starbucks-owned retail facilities, Starbucks' Web site <starbucks.com>, Starbucks-licensed stores, Authorized Retailers (such as grocers and drug stores) and authorized Web sites such as <Shutterfly.com>, <sendoutcards.com> and <touchpoint.com>.

43.     Starbucks first discovered the infringing and dilutive "free" "$250 Starbucks® Gift Card" email and Internet promotions in relation to "YourSmartRewards.com," each of which were improperly using the Starbucks Mark and the Siren Logo®. Starbucks contacted

YourSmartRewards.com and demanded, among other things, that YourSmartRewards.com and any of its subsidiaries and/or affiliates cease all use and refrain from any future use of the Starbucks Mark and the Siren Logo®. After a significant delay, counsel for YourSmartRewards.com responded, failing to make all the representations requested but rather narrowly stating that the company would "cease use of the Starbucks name in our distribution of this promotion." For some period of time thereafter, it appeared that the YourSmartRewards.com promotion had been discontinued.

44.    However, less than eight months later, Starbucks discovered a nearly identical promotion involving a false offer of "free" Starbucks Cards on the Web site <exclusivegiftcards.com>. On January 18, 2006, Starbucks contacted Exclusive Gift Cards and demanded, among other things, that Exclusive Gift Cards cease all use and refrain from any future use of the Starbucks Mark and the Siren Logo®. Counsel for Exclusive Gift Cards, which was the same as counsel for YourSmartRewards.com, responded and indicated that: "Both YourSmartRewards and ExclusiveGiftCards are fictitious names we use for different website promotional channels." After several further communications, counsel for Exclusive Gift Cards provided a final response via email on March 17, 2006. In that email, Exclusive Gift Cards acknowledged the conduct described in Starbucks' prior correspondence, claimed that its conduct was "well within the law," refused to agree to stop the offending activity, and stated that it would be open to discuss a license arrangement with Starbucks.

45.    Defendants' infringement continues to date. Consumers are still receiving spam emails that display and use the Starbucks Mark in the Subject line, in the text of the email and on the Web page that is linked to the email in association with these false and misleading promotions.

46.     On March 2, 2006, TMW, through its counsel, sent a letter to Exclusive Gift Cards which outlined TMW's rights in the TMW Marks, and demanded that Exclusive Gift Cards stop using the TMW Marks and discontinue its "Men's Warehouse Online Winter Savings" promotion.

47.     By letter dated March 20, 2006, counsel for Exclusive Gift Cards acknowledged the conduct described in TMW's March 2nd letter, claimed that its conduct was "well within the law," refused to agree to stop the offending activity, and stated that it would be open to discuss obtaining a license to the TMW Marks.

48.     Exclusive Gift Cards' use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® in connection with its promotional campaign to consumers for its products and services constitutes use of such intellectual property in commerce.

49.     Exclusive Gift Cards' use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® in connection with its promotional campaign for its products and services constitutes transacting business in Texas and in every other state to which it directs its emails and from which its interactive, commercial Web sites can be accessed.

50.     Exclusive Gift Cards is not affiliated with or sponsored by Plaintiffs and has not been authorized by Plaintiffs to use the TMW Marks, the TMW Trade Dress, the Starbucks Mark or the Siren Logo®. Exclusive Gift Cards is not now and never has been authorized by Plaintiffs to use or register any name or mark that includes the TMW Marks, the Starbucks Mark or the Siren Logo® or any other mark that is confusingly similar thereto, or to use any aspect of the TMW Trade Dress.

51.     On information and belief, Exclusive Gift Cards adopted the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® at least in part to deceive, mislead

and confuse the public into believing that Plaintiffs were and are the source of Exclusive Gift Cards' promotional materials and services, or that its activities are affiliated with Plaintiffs, so as to trade on the substantial fame, reputation and goodwill enjoyed by Plaintiffs.

52.     Exclusive Gift Cards' unauthorized use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® is likely to cause confusion, cause mistake, and/or deceive consumers and potential consumers of the parties' respective products and services, at least as to affiliation, connection, or association of Exclusive Gift Cards with Plaintiffs, or as to the origin, sponsorship, or approval of Exclusive Gift Cards' products and/or services by Plaintiffs.

53.     Exclusive Gift Cards' unauthorized use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® falsely designates the origin of its products and/or services.

54.     Exclusive Gift Cards' unauthorized use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® enables it to trade on and receive the benefit of goodwill Plaintiffs have established with considerable labor and expense over many years, and to gain acceptance of its products and services not solely on its own merit, but on the reputation and goodwill of Plaintiffs, the TMW Marks, the TMW Trade Dress, the Starbucks Mark, the Siren Logo®, and Plaintiffs' products and services.

55.     Exclusive Gift Cards' unauthorized use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® dilutes the distinctive quality of those marks and trade dress.

56.     Exclusive Gift Cards' unauthorized use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® began after such intellectual property became famous.

57.     Exclusive Gift Cards' unauthorized use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® is likely to injure Plaintiffs' business reputations.

58.     Exclusive Gift Cards' unauthorized use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® removes from Plaintiffs the ability to control the nature and quality of products and services provided under those marks, and places the valuable reputations and goodwill of Plaintiffs in the hands of Exclusive Gift Cards, over which Plaintiffs have no control.

59.     Exclusive Gift Cards' advertisements are literally false and have the tendency, and are calculated, to mislead and deceive consumers.

60.     On information and belief, Niu Tech L.L.C. is a corporate entity that does business as Exclusive Gift Cards, and both Exclusive Gift Cards and Niu Tech L.L.C. operate under numerous other names and through other affiliated business entities, Web sites and individuals, whose true names and identities are not yet known to Plaintiffs, denominated herein as John Does No. 1-10.  All actions alleged herein as the conduct of Exclusive Gift Cards are, therefore, also the conduct of Niu Tech L.L.C.  On information and belief, John Does No. 1-10 have also engaged in, and continue to engage in, the conduct described above, in whole or in part.

61.     The activities of Defendants complained of herein were and are done willfully, with knowledge that such conduct was and is in direct contravention of the law, in conscious

disregard of Plaintiffs' rights in such intellectual property, and with intent to trade on Plaintiffs'

vast goodwill and to mislead and deceive consumers.

62.     Plaintiffs have no adequate remedy at law.  Defendants' conduct has caused and,

if not enjoined, will continue to cause irreparable damage to Plaintiffs' rights in their marks,

copyrights and trade dress, and to Plaintiffs' business reputations and goodwill.  Plaintiffs'

damages are not yet determined.

## COUNT I

### (Federal Trademark Infringement)

63.     Plaintiffs repeat and reallege all of the allegations contained in the preceding

paragraphs of the Complaint as though the same were fully written herein.

64.     The acts of Defendants complained of herein constitute infringement of Plaintiffs'

federally registered trademarks in violation of 15 U.S.C. § 1114(1).

65.     Defendants' acts have been malicious, fraudulent, deliberate, willful, intentional,

and in bad faith, with full knowledge and conscious disregard of Plaintiffs' rights in the TMW

Marks, the Starbucks Mark and the Siren Logo®, and with intent to cause confusion and to trade

on Plaintiffs' vast goodwill in those marks.  In view of the egregious nature of Defendants'

infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

66.     If not enjoined, Defendants' conduct will continue to cause irreparable damage to

Plaintiffs.  Plaintiffs' damages are not yet determined.

## COUNT II

### (Dilution of Distinct and Famous Marks and Trade Dress)

67.     Plaintiffs repeat and reallege all of the allegations contained in the preceding

paragraphs of the Complaint as though the same were fully written herein.

68.     The acts of Defendants complained of herein have caused, and continue to cause, dilution of the distinctive quality of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

69.     Defendants willfully intended to trade on Plaintiffs' reputation and to cause dilution of Plaintiffs' famous TMW Marks, TMW Trade Dress, Starbucks Mark and Siren Logo®.

70.     If not enjoined, Defendants' conduct will continue to cause irreparable damage to Plaintiffs.  Plaintiffs' damages are not yet determined.

## COUNT III

### (Federal Trade Dress Infringement)

71.     TMW repeats and realleges all of the allegations contained in the preceding paragraphs of the Complaint as though the same were fully written herein.

72.     The acts of Defendants complained of herein constitute infringement of the TMW Trade Dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73.     Defendants' acts have been malicious, fraudulent, deliberate, willful, intentional, and in bad faith, with full knowledge and conscious disregard of TMW's rights in the TMW Trade Dress, and with intent to cause confusion and to trade on TMW's vast goodwill in the TMW Trade Dress.  In view of the egregious nature of Defendants' infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

74.     If not enjoined, Defendants' conduct will continue to cause irreparable damage to TMW.  TMW's damages are not yet determined.

## COUNT IV

### (Federal Copyright Infringement)

75.     Starbucks repeats and realleges all of the allegations contained in the preceding paragraphs of the Complaint as though the same were fully written herein.

76.     Starbucks owns the copyright in the Siren Logo®.

77.     Under the Copyright Act, 17 U.S.C. § 101 *et seq.*, Starbucks enjoys exclusive rights with respect to the Siren Logo®, including the exclusive rights to reproduce, distribute, display and create derivative works based thereon.

78.     Starbucks has been issued a certificate of registration by the Register of Copyrights for the Siren Logo®, Reg. No. VA 875-932.

79.     At no time were Defendants authorized to reproduce, publish, distribute copies of, display or prepare derivative works based on all or any portion of the Siren Logo®.

80.     Defendants have infringed Starbucks' copyright in the Siren Logo®.

81.     Defendants' copyright infringement has been willful and malicious.

82.     If not enjoined, Defendants' conduct will continue to cause irreparable damage to Starbucks.  Starbucks' damages are not yet determined.

## COUNT V

### (Federal Unfair Competition)

83.     Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs of the Complaint as though the same were fully written herein.

84.     The acts of Defendants complained of herein constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.     Defendants' unfair competition has been willful and malicious, thus making this an exceptional case under 15 U.S.C. § 1117(a).

86.     If not enjoined, Defendants' conduct will continue to cause irreparable damage to Plaintiffs. Plaintiffs' damages are not yet determined.

## COUNT VI

### (Federal False Advertising)

87.     Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs of the Complaint as though the same were fully written herein.

88.     The acts of Defendants complained of herein constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

89.     Defendants' false advertising has been willful and malicious, thus making this an exceptional case under 15 U.S.C. § 1117(a).

90.     If not enjoined, Defendants' conduct will continue to cause irreparable damage to Plaintiffs. Plaintiffs' damages are not yet determined.

## COUNT VII

### (Injury to Business Reputation or Trade Names, Marks, Copyrights and Trade Dress)

91.     Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs of the Complaint as though the same were fully written herein.

92.     The acts of Defendants complained of herein constitute injury to Plaintiffs' business reputations and dilution of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® in violation of Tex. Bus. & C. Ann. § 16.29.

93.     If not enjoined, Defendants' conduct will continue to cause irreparable damage to Plaintiffs. Plaintiffs' damages are not yet determined.

COUNT VIII

(Common Law Unfair Competition)

94.     Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs of the Complaint as though the same were fully written herein.

95.     The acts of Defendants complained of herein constitute unfair competition in violation of the common law of Texas.

96.     If not enjoined, Defendants' conduct will continue to cause irreparable damage to Plaintiffs. Plaintiffs' damages are not yet determined.

COUNT IX

(Unjust Enrichment)

97.     Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs of the Complaint as though the same were fully written herein.

98.     The acts of Defendants complained of herein constitute unjust enrichment of Defendants at Plaintiffs' expense.

99.     If not enjoined, Defendants' conduct will continue to cause irreparable damage to Plaintiffs. Plaintiffs' damages are not yet determined.

PRAYER

WHEREFORE, Plaintiffs pray that:

(a)     Defendants, their agents, servants, employees, attorneys, representatives, and all those persons in active concert or participation with Defendants, be preliminarily and permanently enjoined and restrained from using: (1) the TMW Marks, the TMW Trade Dress, the Starbucks Mark or the Siren Logo® as a part of any mark, name, domain name, email, gift card, email address, designation, design, or indicia of origin; or (2) any other mark, name,

domain name, email, gift card, email address, designation, or indicia of origin that is confusingly similar to any of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and/or the Siren Logo® that will dilute the distinctive quality of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo®, including but not limited to:

      (i)     using any of Plaintiffs' registered and common law trademarks including the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® in connection with the operation of Defendants' business, promotional offers, or advertising, whether on Defendants' Web sites, in emails or through any other media;

      (ii)    using any trademark, trade name, logo, words, or design that tends falsely to represent or is likely to confuse, mislead or deceive consumers, purchasers, Defendants' customers or prospective customers, or any members of the public that Defendants' email and/or Web site promotions, products or services originate from Plaintiffs or that Defendants' email and/or Web site promotions, products or services have been sponsored, approved, or licensed by, or are associated with Plaintiffs or are in some way connected or affiliated with Plaintiffs;

      (iii)   engaging in any conduct which tends falsely to represent or is likely to confuse, mislead or deceive consumers, purchasers, Defendants' customers or prospective customers, or members of the public to believe that Defendants are connected with Plaintiffs or are sponsored, approved, or licensed by Plaintiffs or are in some way connected or affiliated with Plaintiffs;

      (iv)   engaging in any conduct which tends falsely to represent or is likely to confuse, mislead or deceive consumers, purchasers, Defendants' customers or

prospective customers, or members of the public to believe that Defendants' products and/or services are free; and

     (v)    otherwise competing unfairly with Plaintiffs in any manner in connection with the operation of any aspect of Defendants' businesses;

    (b)    Defendants be ordered, pursuant to 15 U.S.C. § 1118, to deliver up to Plaintiffs for destruction all copies and reproductions in their possession, or under their control or custody, of all emails, Web site content, labels, signs, prints, packages, wrappers, promotional materials, forms, gift cards and advertisements in the possession, custody or control of Defendants bearing the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® or any other mark, words, design or indicia of origin that is confusingly similar to the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® or that will dilute the distinctive quality of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo®;

    (c)    Defendants be ordered to file with this Court and to serve upon Plaintiffs, within 30 days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

    (d)    Plaintiffs recover all damages they have sustained as a result of Defendants' activities and that said damages be trebled;

    (e)    Plaintiffs recover exemplary damages;

    (f)    An accounting be directed to determine Defendants' profits resulting from their activities and that such profits be paid over to Plaintiffs, increased as the Court finds to be just under the circumstances of this case;

    (g)    Plaintiffs recover their reasonable attorney fees;

(h)   Plaintiffs recover their costs of this action and prejudgment and post-judgment interest; and

(i)   Plaintiffs recover such other relief as the Court may deem appropriate.

Dated: May 31, 2006                              FULBRIGHT & JAWORSKI L.L.P.

John M. Mings
Southern District Admission No. 12374
Texas State Bar No. 14176900
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

Attorney for Plaintiffs' The Men's Wearhouse,
Inc., TMW Marketing Company, Inc., Starbucks
Corporation; and Starbucks U.S. Brands L.L.C.

OF COUNSEL:
Fulbright & Jaworski L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: May 31, 2006

FULBRIGHT & JAWORSKI L.L.P.

John M. Mings
Southern District Admission No. 12374
Texas State Bar No. 14176900
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

Attorney for Plaintiffs' The Men's Wearhouse,
Inc., TMW Marketing Company, Inc., Starbucks
Corporation; and Starbucks U.S. Brands L.L.C.

OF COUNSEL:
Fulbright & Jaworski L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

31095792.2