UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

MAY 3 1 2006

MICHAEL N. MILBY, CLERK OF COURT

| | | |
|---|---|---|
| THE MEN'S WEARHOUSE, INC.; TMW MARKETING COMPANY, INC.; STARBUCKS CORPORATION; and STARBUCKS U.S. BRANDS L.L.C., | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO.: H-06 -1853 |
| v. | § § | |
| EXCLUSIVE GIFT CARDS, NIU TECH L.L.C., and JOHN DOES NO. 1-10, | § § § | |
| Defendants. | § | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

John M. Mings
State Bar No. 14176900
S.D. Tex. I.D. No. 12374
*Attorney-in-Charge*
FULBRIGHT & JAWORSKI L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

**Counsel for Plaintiffs' The Men's
Wearhouse, Inc.; TMW Marketing
Company, Inc.; Starbucks
Corporation; and Starbucks U.S.
Brands L.L.C.**

OF COUNSEL:
Fulbright & Jaworski L.L.P.

31101092.3

## TABLE OF CONTENTS

Page

Table of Authorities ..................................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ...............................................................................................2

     A.    TMW's Trademarks and Trade Dress .......................................................2

     B.    Starbucks, Its Business and Its Trademarks ..............................................4

     C.    Defendants' Unlawful Activities ...............................................................7

ARGUMENT ....................................................................................................................11

   I.    THE COURT SHOULD GRANT A PRELIMINARY INJUNCTION TO STOP DEFENDANTS FROM INFRINGING PLAINTIFFS' TRADEMARKS AND TRADE DRESS AND FROM FALSELY ADVERTISING DEFENDANTS' PRODUCTS AND SERVICES. ..................11

     A.    Plaintiffs Will Likely Succeed on the Merits of Their Trademark Infringement Claim ..................................................................................12

          1.    Plaintiffs Own Valid, Incontestable Registrations for Their Trademarks ....................................................................................13

          2.    Defendants' Use of Plaintiffs' Trademarks Is Likely Infringing ....................................................................................14

               b.    Type of Mark Allegedly Infringed ....................................15

               c.    Similarity Between the Two Marks ....................................15

               d.    Similarity of the Products or Services ...............................15

               e.    Identity of Retail Outlets and Purchasers ........................15

               f.    Identity of the Advertising Media Used ...........................16

               g.    Defendants' Intent ..............................................................16

               h.    Evidence of Actual Confusion ...........................................17

          3.    Defendants' Use of Plaintiffs' Trademarks Is Not a Fair Use ............................................................................................18

     B.    TMW is Likely to Succeed on the Merits of Its Trade Dress Infringement Claim ..................................................................................19

          1.    The TMW Trade Dress Is Non-Functional ...............................21

          2.    The TMW Trade Dress Is Inherently Distinctive or Has Acquired Distinctiveness ...........................................................21

          3.    Defendants' Infringement Creates a Likelihood of Confusion ...................................................................................22

TABLE OF CONTENTS
(continued)

Page

C.    Plaintiffs Are Likely to Succeed on the Merits of Their False Advertising Claim.................................................................................23

D.    Plaintiffs Are Likely to Succeed on the Merits of Their Federal Unfair Competition Claim (False Designation of Origin)........................24

II.    THE EQUITIES FAVOR PLAINTIFFS............................................................25

A.    Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief ...........25

B.    No Cognizable Harm to Defendants Will Result from Granting Preliminary Injunctive Relief ...................................................................28

C.    The Public Interest Favors the Grant of Injunctive Relief........................28

CONCLUSION ............................................................................................................29

TABLE OF AUTHORITIES

Page

CASES

*Berg v. Symons,*
   393 F. Supp. 2d 525 (S.D. Tex. 2005)........................................................................21

*Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.,*
   510 F.2d 1004 (5th Cir. ),
   *cert. denied,* 423 U.S. 868 (1975) ...........................................................................25

*Chemlawn Servs. Corp. v. GNC Pumps, Inc.,*
   690 F. Supp. 1560 (S.D. Tex. 1988)..........................................................................25

*Elvis Presley Enters. v. Capece,*
   141 F.3d 188 (5th Cir. 1998)..........................................................................14, 22, 24

*Engineering Dynamics, Inc. v. Structural Software, Inc.,*
   26 F.3d 1335 (5th Cir. 1994)................................................................................19, 21

*Exxon Corp. v. Texas Motor Exchange, Inc.,*
   628 F.2d 500 (5th Cir. 1980).........................................................................................13

*Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts,*
   944 F.2d 1235 (6th Cir. 1991).....................................................................................22

*Freddie Fuddruckers, Inc. v. Ridgeline, Inc.,*
   589 F. Supp. 72 (N.D. Tex. 1984),
   *aff'd,* 783 F.2d 1062 (5th Cir. 1986).........................................................................28

*Frostie Co. v. Dr. Pepper Co.,*
   341 F.2d 363 (5th Cir. 1965).........................................................................................17

*GoTo.com, Inc. v. Walt Disney Co.,*
   202 F.3d 1199 (9th Cir. 2000).....................................................................................17

*Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.,*
   182 F.3d 598 (8th Cir. 1999).......................................................................................12

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,*
   58 F.3d 27 (2d Cir. 1995).............................................................................................20

*Kinetic Concepts, Inc. v. BlueSky Medical Group, Inc.,*
   2005 U.S. Dist. LEXIS 32353 (W.D. Tex. Nov. 1, 2005)..........................................18

*Lakedreams v. Taylor,*
   932 F.2d 1103 (5th Cir. 1991).....................................................................................12

*McNeil-PPC, Inc. v. Merisant Co.,*
   2004 U.S. Dist. LEXIS 27733 (D. P.R. July 29, 2004)..............................................20

*NXIVM Corp. v. Ross Institute,*
   364 F.3d 471 (2d Cir. ),
   *cert. denied,* 543 U.S. 1000 (2004) ..........................................................................12

TABLE OF AUTHORITIES
(Continued)

Page

*Paddington Corp. v. Attiki Imps. & Distribs., Inc.,*
  996 F.2d 577 (2d Cir. 1993) ...........................................................................20

*Pebble Beach Co. v. Tour 18 I,*
  155 F.3d 526 (5th Cir. 1998) ....................................................................14, 18

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*
  227 F.3d 489 (5th Cir. 2000),
  *cert. denied,* 532 U.S. 920 (2001) ..................................................................23

*Qualitex Co. v. Jacobson Prods. Co.,*
  514 U.S. 159 (1995) .......................................................................................21

*Quantum Fitness Corp. v. Quantum Lifestyle Ctrs. L.L.C.,*
  83 F. Supp. 2d 810 (S.D. Tex. 1999) .............................................................12

*Roho, Inc. v. Marquis,*
  902 F.2d 356 (5th Cir. 1990) ..........................................................................24

*Scientific Applications, Inc. v. Energy Conservation Corp.,*
  436 F. Supp. 354 (N.D. Ga. 1977) ..................................................................28

*Seven-Up Co. v. Coca-Cola Co.,*
  86 F.3d 1379 (5th Cir. 1996) ..........................................................................12

*Taco Cabana Int'l v. Two Pesos, Inc.,*
  932 F.2d 1113 (5th Cir. 1991),
  *aff'd,* 505 U.S. 763 (1992) .............................................................................20

*TrafFix Devices, Inc. v. Marketing Displays, Inc.,*
  532 U.S. 23 (2001) ....................................................................................20, 21

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
  505 U.S. 763 (1992) ............................................................................19, 20, 24

*Urgent Gear Inc v. Savoia,*
  2001 U.S. Dist. LEXIS 20459 (N.D. Tex. Dec. 10, 2001) ..............................20

*Wal-Mart Stores, Inc. v. Samara Bros.,*
  529 U.S. 205 (2000) ............................................................................12, 13, 19

*Westchester Media v. PRL USA Holdings, Inc.,*
  214 F.3d 658 (5th Cir. 2000) ....................................................................14, 22

*World Carpets, Inc. v. Dick Littrell's New World Carpets,*
  438 F.2d 482 (5th Cir. 1971) ..........................................................................17

*World Impressions, Inc. v. McDonald's Corp.,*
  235 F. Supp. 2d 831 (N.D. Ill. 2002) ..............................................................19

*Worthington Foods, Inc. v. Kellogg Co.,*
  732 F. Supp. 1417 (S.D. Ohio 1990) ..............................................................28

TABLE OF AUTHORITIES
(Continued)

Page

STATUTES & ADMINISTRATIVE CODES

15 U.S.C. § 1051 *et seq.* (Lanham Act)..................................................................11, 12, 13

15 U.S.C. § 1052 ........................................................................................................13

15 U.S.C. § 1057(b) ....................................................................................................13

15 U.S.C. § 1065 ...................................................................................................1, 13, 15

15 U.S.C. § 1065. .......................................................................................................13

15 U.S.C. § 1114(1)(a) ..............................................................................................12, 13

15 U.S.C. § 1115(b)...............................................................................................1, 13, 15

15 U.S.C. § 1127 ........................................................................................................13

15 U.S.C. §1125(a) (Lanham Act § 43(a)) ............................................................23, 24

TREATISES

3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 23.51 (4th ed. 2005)....................................................................................................18

DAN B. DOBBS, DOBBS LAW OF REMEDIES, § 6.4(5) (2d ed. 1993)...............................26

GILSON, J., TRADEMARK PROTECTION & PRACTICE § 4.03 (Rel. 53, 2004) ...................13

## PRELIMINARY STATEMENT

Defendants are falsely advertising and promoting "free" $250 "Men's Wearhouse Gift Cards" and "free" "$250 Starbucks® Gift Cards" by improperly using and displaying TMW's trademarks and trade dress and Starbucks' trademarks and copyrights in Defendants' mass email distribution and on pages within interactive Web sites such as <exclusivegiftcards.com> and <yoursmartrewards.com>. Defendants' misleading mass emails display Plaintiffs' trademarks in the subject line and/or in the sender address of the emails. In addition, the text of the emails as well as the linked interactive Web sites display Plaintiffs' trademarks, copyrights and trade dress. Despite Defendants' advertisements, the "gift cards" offered by Defendants are not "free." In order to be *eligible* to receive a gift card, consumers must provide personal information, respond to lengthy questionnaires and enroll in numerous unrelated promotional offers, many of which require payment of a fee. In fact, it is believed that even after the consumer completes Defendants' onerous requirements, Defendants rarely actually deliver a gift card to the consumer.

By this motion, Plaintiffs seek to enjoin Defendants from using any part, component or feature of Plaintiffs' trademarks, copyrights, and/or trade dress in Defendants' email and Web site advertisements, offers and promotions, and from advertising or offering to members of the public any gift cards for the products and services of Plaintiffs, during the pendency of this action.

Plaintiffs The Men's Wearhouse, Inc. ("TMW Inc.") and TMW Marketing Company, Inc. ("TMW Marketing") (collectively, "TMW") own the federal and state registration for the trademark, THE MEN'S WEARHOUSE. The federal registration issued in 1989 and is now incontestable pursuant to 15 U.S.C. § 1065 and § 1115(b) . TMW also owns the trade dress used in connection with its products and services. TMW's trade dress, in particular that used on its

311010923

official Web site, <menswearhouse.com>, includes high quality photographs of men, women and boys dressed in formal attire, together with TMW's trademarks.  TMW has used its trademarks since 1973, and its distinctive trade dress in its advertising since 1997.  TMW's trademarks and trade dress are very valuable to TMW.

For 34 years, Plaintiffs Starbucks Corporation and Starbucks U.S. Brands L.L.C. (collectively, "Starbucks") have used the Starbucks® and Starbucks Coffee® trademarks (collectively, the "Starbucks Mark") and iterations of the famous Siren Logo® both to identify Starbucks' goods and services and as the name of the company.  The Starbucks Mark and the Siren Logo® are the subject of 60 trademark registrations issued by the United States Patent and Trademark Office, many of which are incontestable, and have been registered in 134 foreign countries.  The Siren Logo® is also protected by copyright laws and has been registered with the United States Copyright Office as Reg. No. VA 875-932.  Starbucks has spent substantial time, effort and money advertising and promoting the Starbucks Mark and the Siren Logo® throughout the United States and elsewhere.  As a result of these efforts, the Starbucks Mark and the Siren Logo® have become famous and highly distinctive marks.

The actions of Defendants Exclusive Gift Cards and Niu Tech L.L.C. constitute federal trademark, copyright and trade dress infringement, federal false advertising, unfair competition under federal and state law, dilution, injury to business reputation and unjust enrichment. Exclusive Gift Cards and Niu Tech L.L.C. committed such acts both on their own and with the aid or assistance of the John Doe Defendants.  This Court should enjoin Exclusive Gift Cards, Niu Tech L.L.C. and as many of the John Doe Defendants who become known to Plaintiffs, from their unlawful conduct for the reasons set forth below.

## STATEMENT OF FACTS

A.    TMW's Trademarks and Trade Dress

Since 1973, TMW Inc. has operated as a retailer of men's and boys' clothing in the United States and is currently the number one discount retailer of men's clothing in North America. TMW adopted in 1973, and continues to use, THE MEN'S WEARHOUSE as a service mark. TMW also adopted, and continues to use, THE MEN'S WEARHOUSE as a trademark, first using it as a trademark as early as 1980. TMW owns federal registrations for use of this trademark, including for use with clothing, which issued in 1989, and jewelry, which issued in 2000. In the State of Texas, TMW owns registrations for THE MEN'S WEARHOUSE for advertising clothing, jewelry and leather goods. TMW owns all rights, title and interest in and to these trademarks (the "TMW Marks"). (Declaration of Jayme Maxwell ("Maxwell Decl.") ¶ 3.)

TMW also owns all intellectual property associated with its products and services, including the trade dress used with its products and services (the "TMW Trade Dress"). (*Id.* at ¶ 4.) The TMW Trade Dress appears in TMW's advertisements and promotional materials for its products and services in various media, including on its official Web site, <menswearhouse.com>. The TMW Trade Dress as used on TMW's Web site contains several features combined in a unique format to create a highly distinctive overall impression. These elements are described in detail in the Jayme Maxwell declaration. (*Id.* at ¶¶ 7-9.)

TMW has continually used the TMW Marks since 1973, and many elements of the TMW Trade Dress since 1997. TMW has used many elements of the TMW Trade Dress on its Web site, <menswearhouse.com>, since 2000, and has continuously used some or all of these elements since 2001. Although TMW periodically refreshes its trade dress, it has not changed any of its distinctive, recognizable elements. (*Id.* at ¶ 11.)

TMW has invested considerable effort and enormous resources into advertising and promoting its products and services using the TMW Marks and TMW Trade Dress, including television, radio, newspaper, direct mailing, window signs, outdoor advertisements and over the Internet, through its Web site, <menswearshouse.com>. (*Id.* at ¶¶ 6, 13.) In addition, TMW has offered gift cards for its products and services on the homepage of its Web site since early 2002, and offers its gift cards on other Web sites such as <giftcertificates.com> and <incentone.com>. (*Id.* at ¶ 9.) TMW Inc. gift cards have been available for sale in its stores since 2002. (*Id.*) Between 1973 and the present, TMW has continuously promoted, advertised, and sold TMW Inc. products and services throughout the United States. (*Id.* at ¶ 13.) In the past five years, TMW spent at least $194,000,000 in total marketing support for its products and services throughout North America. (*Id.*) In part as a result of these efforts, TMW Inc. has been recognized as the number one men's retailer in North America for several years in a row. (*Id.* at ¶ 14.)

As a result of the extensive advertising and promotion of TMW's products and services, the TMW Marks and TMW Trade Dress are recognized as originating from TMW. (*Id.* at ¶ 16.) There is a substantial demand for products and services with the TMW Marks and TMW Trade Dress. The TMW Marks and TMW Trade Dress represent TMW's commitment to providing high quality products and services. (*Id.* at ¶ 17.) The goodwill associated with them are of inestimable value to TMW. (*Id.*)

B.      Starbucks, Its Business and Its Trademarks

Starbucks is the best-known vendor of specialty coffees in America today. Beginning in 1971 as a single, Seattle-based coffee shop, Starbucks has grown to more than 11,000 retail locations throughout North America and in 37 foreign countries. Starbucks' retail stores carry a full line of premium coffee, espresso-based beverages and teas, blended beverages, 40 different

varietals of Starbucks® brand roasted coffees, and other Starbucks-branded merchandise. Starbucks also supplies premium, fresh-roasted coffees to hundreds of restaurants and other accounts throughout the world. (Declaration of Brady Brewer ("Brewer Decl."), ¶¶ 2, 7, 12.)

The key to Starbucks' phenomenal success is the consistent high quality and strong reputation of its fresh-roasted specialty coffees, brewed coffee and espresso beverages and the other products and services it provides. Starbucks has a reputation for excellence, particularly in the area of roasted coffees and coffee beverages, and is widely recognized for its knowledgeable staff and superior service. (*Id.* at ¶ 4.)

For 34 years, Starbucks has continuously used the Starbucks® and Starbucks Coffee® trademarks (collectively, the "Starbucks Mark") and iterations of its famous Siren Logo® both to identify its goods and services and as the name of the company. The Starbucks Mark and the Siren Logo® are the subject of approximately 60 trademark registrations issued by the United States Patent and Trademark Office, many of which are incontestable, and have been registered in 134 foreign countries. (*Id.* at ¶ 5, Ex. B.) Moreover, because it is an original artistic work, the Siren Logo® is protected by copyright laws and has been registered with the United States Copyright Office as Reg. No. VA 875-932. (*Id.* at ¶ 5.)

Starbucks has spent substantial time, effort and money advertising and promoting the Starbucks Mark and the Siren Logo® throughout the United States and elsewhere:

(a)     Starbucks owns, or operates through affiliates and licensees, more than 7,900 retail stores in North America. In addition, there are currently over 3,000 Starbucks retail stores located in 37 foreign countries. These stores—which are visited by approximately 40 million customers per week—carry a full line of coffee, cappuccino, espresso-based beverages and teas brewed and served on premises; blended beverages; 40 different varieties of Starbucks® brand

roasted coffees; baked goods and confections; and other branded merchandise. Each store prominently displays the Starbucks Mark and the Siren Logo® on exterior signage and at multiple locations within the store. (*Id.* at ¶ 7.)

(b) Starbucks has licensed Host Marriott Services Corporation to operate approximately 270 coffee kiosks ("Starbucks Kiosks") in major airports and other locations in the United States and Canada. The Starbucks Kiosks sell Starbucks® brand coffees and other beverages prepared on site in accordance with strict beverage preparation and quality control procedures established by Starbucks, which are intended to maintain the high and consistent standards imposed by Starbucks on its own stores. The Starbucks Kiosks utilize the Starbucks Mark and the Siren Logo® in a manner similar to that employed in Starbucks-owned retail outlets. (*Id.* at ¶ 9.)

(c) Starbucks has entered into similar license agreements with major U.S. supermarkets, such as Safeway, Fred Meyer, Super Target and Albertsons, through which Starbucks locations are operated within the supermarkets. These locations prominently display the Starbucks Mark and the Siren Logo®. (*Id.* at ¶ 11.)

(d) Starbucks sells its coffee to and through hundreds of other Authorized Resellers, including restaurants, airlines (including United Airlines), sport and entertainment venues, motion picture theaters, hotels (including all corporate-owned Sheraton and Westin Hotels in the U.S., which offer Starbucks® coffee in-room) and cruise ship lines. Starbucks provides these accounts with approved equipment and with quality standards and procedures for brewing and serving Starbucks® coffee. Starbucks permits these accounts to use the Starbucks Mark and the Siren Logo® on their menus and in certain promotional materials. (*Id.* at ¶ 12.)

6

(e)     Starbucks coffees are served from dedicated retail areas located in over 590 Barnes & Noble Bookstores ("B&N Cafes"). B&N Cafes serve Starbucks® brand coffee and espresso beverages brewed and served on site in accordance with quality standards and procedures established by Starbucks, and prominently display the Starbucks Mark and the Siren Logo®. (*Id.* at ¶ 10.)

(f)     Starbucks distributes several exclusive coffee blends, Starbucks® brand ice cream, bottled Frappuccino® and Starbucks DoubleShot® coffee drinks at grocery stores and similar retailers nationwide. Each of these products prominently bears the Starbucks Mark and the Siren Logo®. (*Id.* at ¶ 8.)

(g)     Starbucks operates an Internet Web site (<www.starbucks.com>) that generates, on average, 500,000 "hits" from visitors per week. The Starbucks Mark and the Siren Logo® are incorporated into many of the individual "pages" within this site, and are displayed on much of the branded merchandise offered for sale on-line. (*Id.* at ¶ 13.)

In addition, Starbucks offers reloadable multi-use cards—Starbucks Cards—for sale to the public through a variety of channels including but not limited to Starbucks-owned retail facilities, Starbucks' Web site <starbucks.com>, Starbucks-licensed stores, authorized retailers (such as grocers and drug stores) and authorized Web sites such as <Shutterfly.com>, <sendoutcards.com> and <touchpoint.com>. Each of these channels of distribution is authorized by Starbucks and is in strict compliance with Starbucks' policies regarding distribution of Starbucks Cards. (*Id.* at ¶ 14.)

As a result of the foregoing and similar use and promotion, the Starbucks Mark and the Siren Logo® have become famous and highly distinctive trademarks. (*Id.* at ¶¶ 15-18, Ex. A.)

C.    Defendants' Unlawful Activities

Defendant Exclusive Gift Cards is a company that offers its products to the public through mass promotional email campaigns and several interactive Web sites under the domain names <exclusivegiftcards.com>, <yoursmartrewards.com>, <dealofday.com> and <rewardhits.com>, among others.  <Exclusivegiftcards.com> is the Web site that currently contains the infringing, dilutive and false advertising at issue herein.  Defendant Niu Tech L.L.C. is a limited liability company that, it is believed, does business as Exclusive Gift Cards and registered the domain name <exclusivegiftcards.com>, as well as some or all of the other foregoing domain names.  Defendants John Does No. 1-10 are affiliated with Exclusive Gift Cards and Niu Tech L.L.C. and engage in, or assist, them with the same or similar business activities.

Long after Plaintiffs' adoption and use of their respective famous trademarks, and without Plaintiffs' consent, Defendants have unlawfully used the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® in commerce via mass email distributions and, various Web sites that they operate and other Web sites with which they are affiliated.

In particular, Exclusive Gift Cards has used the TMW Marks and TMW Trade Dress in connection with its "Men's Warehouse Online Winter Savings" email promotion, whereby it offered consumers, via mass email distribution and interactive Web sites, a purportedly "free" $250 "Men's Wearhouse Gift Card."  The promotional email links to the Exclusive Gift Cards' Web site, at the domain name <exclusivegiftcards.com>, wherein its use of the TMW Marks and TMW Trade Dress is both blatant and prominent.  (Maxwell Decl., ¶ 18.)  Indeed, the TMW Marks appear multiple times on the Web site against a backdrop of photographs that look strikingly similar to those on TMW's Web site.  The subject line of the email states simply, "Men's Warehouse On-Line Winter Savings," and says nothing about Exclusive Gift Cards'

connection with the promotion, but rather, clearly, albeit falsely, attributes the promotion to TMW. (*Id.* at ¶ 19.)

Defendants have also used the Starbucks Mark and the Siren Logo® in connection with its "free" "$250 Starbucks® Gift Card" promotion whereby it offered consumers, via mass email distribution and interactive Web sites, a purportedly "free" $250 "gift card" for Starbucks® beverages, food and merchandise. The mass emails display the Starbucks Mark in the subject line and/or in the sender address of the email. In addition, the text of the email as well as the linked pages of interactive Web sites, including but not limited to <yoursmartrewards.com> and <exclusivegiftcards.com>, display both the Starbucks Mark and the Siren Logo®. (Brewer Decl., ¶¶ 21-24, Exs. C, F.)

The specific addresses (known as "URLs") contained in these spam emails change from time to time. Consumers who received these emails six months ago were directed to a "Web page" within the <exclusivegiftcards.com> and <yoursmartrewards.com> Web sites that may not exist today. Nevertheless, iterations of these misleading advertisements and promotions continue to this day on other Web pages with different URLs also owned or operated by Defendants. For example, one of these spam email is attached to the declaration of counsel, John Mings. The Subject line reads: "Brian, Get your fix at Starbucks." The text of the email contains a false and misleading advertisement that infringes the Starbucks Mark. The text also contains a link to the URL address <http://exclusivegiftcards.com/rd_p?p=124820&c=13819-starbucks250gc_emc_d30&a=CD176> The link, which is accessible as of today, connects the viewer to a Web page that contains an iteration of the infringing promotion. (Declaration of John Mings ("Mings Decl."), Ex. A.) Defendants vary the URL addresses used, but the infringement continues.

In addition, the promised cards are not "free."  Hidden in fine print is the requirement that the consumer seeking the "free" gift provide personal information, respond to lengthy questionnaires and enroll in numerous promotional offers relating to various other companies, many of which require payment of a fee.  Therefore, Exclusive Gift Cards' advertisements which state that its gift cards are "free" are false, as these allegedly "free" gift cards require the payment of money as well as the completion of numerous other requirements.  (Maxwell Decl., ¶ 18.) (Brewer Decl., ¶ 22.)  The advertisements are also false, because, it is believed, even after completion of Exclusive Gift Cards' onerous requirements for a gift card, it rarely delivers a gift card to a consumer.

Both "Men's Wearhouse" and Starbucks are well-known companies, with famous trademarks, that offer popular products and services.  Exclusive Gift Cards knew that featuring the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® in their advertisements would increase consumer interest in their promotions and other products.

TMW itself offers for sale to the public gift cards through its own official Web site, <menswearhouse.com>, on the homepage of such site, and in affiliation with two other authorized Web sites that operate under the domain names <giftcertificates.com> and <incentone.com>.  (Maxwell Decl., ¶ 9.)  Similarly, Starbucks offers Starbucks Cards for sale to the public through a variety of channels including but not limited to Starbucks-owned retail facilities, Starbucks' Web site <starbucks.com>, Starbucks-licensed stores, Authorized Retailers (such as grocers and drug stores) and authorized Web sites such as <Shutterfly.com>, <sendoutcards.com> and <touchpoint.com>.  (Brewer Decl., ¶14.)

D.      Plaintiffs' Efforts To Resolve This Dispute Without Resort To Litigation

Starbucks first discovered the infringing and dilutive "free" "$250 Starbucks® Gift Card" email and Internet promotions in relation to "YourSmartRewards.com," each of which were

improperly using the Starbucks Mark and the Siren Logo®.  Starbucks contacted

YourSmartRewards.com and demanded, among other things, that YourSmartRewards.com and

any of its subsidiaries and/or affiliates cease all use and refrain from any future use of the

Starbucks Mark and the Siren Logo®.  After a significant delay, counsel for

YourSmartRewards.com responded, failing to make all the representations requested but rather

narrowly stating that the company would "cease use of the Starbucks name in our distribution of

this promotion."  For some period of time thereafter, it appeared that the

YourSmartRewards.com promotion had been discontinued.  (*Id.* at ¶¶ 21, 23, Exs. C-E.)

However, less than eight months later, Starbucks discovered a nearly identical promotion

involving a false offer of "free" Starbucks Cards on the Web site <exclusivegiftcards.com>.  On

January 18, 2006, Starbucks contacted Exclusive Gift Cards and demanded, among other things,

that Exclusive Gift Cards cease all use and refrain from any future use of the Starbucks Mark and

the Siren Logo®.  Counsel for Exclusive Gift Cards, which was the *same* as counsel for

YourSmartRewards.com, responded and indicated that: "Both YourSmartRewards and

ExclusiveGiftCards are fictitious names we use for different website promotional channels."

After several further communications, counsel for Exclusive Gift Cards provided a final response

via email on March 17, 2006.  In that email, Exclusive Gift Cards acknowledged the conduct

described in Starbucks' prior correspondence, claimed that its conduct was "well within the

law," refused to stop the offending activity, and stated that it would be open to discuss a license

arrangement with Starbucks.  (*Id.* at ¶ 24, Exs. F-I.)  Moreover, Defendants' infringement

continues to date.  Consumers are still receiving spam emails that display and use the Starbucks

Mark in the Subject line, in the text of the email and on the Web page that is linked to the email

in association with these false and misleading promotions.  (Mings Decl., Ex. A.)

On March 2, 2006, TMW, through its counsel, sent a letter to Defendant Exclusive Gift Cards which outlined TMW's rights in the TMW Marks, and demanded that Exclusive Gift Cards stop using the TMW Marks and discontinue its "Men's Warehouse Online Winter Savings" promotion. (Maxwell Decl., ¶ 25, Ex. D.)  By letter dated March 20, 2006, counsel for Exclusive Gift Cards responded.  In that letter, Exclusive Gift Cards acknowledged the conduct described in TMW's March 2nd letter, claimed that its conduct was "well within the law," refused to stop the offending activity, and stated that it would be open to discuss obtaining a license to the TMW Marks. (*Id.* at ¶ 26, Ex. E.)

Exclusive Gift Cards is not affiliated with Plaintiffs.  Its advertisements are not sponsored or authorized by Plaintiffs.  (Maxwell Decl., ¶ 28.) (Brewer Decl., ¶ 25.)  Defendants' actions violate the Lanham Act and, based on the evidence submitted herewith, Plaintiffs are entitled to a preliminary injunction enjoining Defendants from using any part, component or feature of Plaintiffs' trademarks, copyrights, and/or trade dress in Defendants' email and Web site advertisements, offers and promotions, and from advertising or offering to members of the public any gift cards for the products and services of Plaintiffs, during the pendency of this action.

## ARGUMENT

**I.  THE COURT SHOULD GRANT A PRELIMINARY INJUNCTION TO STOP DEFENDANTS FROM INFRINGING PLAINTIFFS' TRADEMARKS AND TRADE DRESS AND FROM FALSELY ADVERTISING DEFENDANTS' PRODUCTS AND SERVICES.**

"A plaintiff seeking a preliminary injunction must establish: (1) a substantial likelihood of success on the merits, (2) a substantial threat that failure to grant the injunction will result in irreparable injury, (3) that the threatened injury outweighs any damage that the injunction will cause the opposing party, and (4) that the injunction will not disserve the public interest." *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs. L.L.C.*, 83 F. Supp. 2d 810, 816 (S.D. Tex.

1999); *see also Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991). No single factor is controlling. *NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 482 (2d Cir.), *cert. denied*, 543 U.S. 1000 (2004); *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999).

Injunctive relief is available to a Lanham Act plaintiff upon demonstrating, at a minimum, a likelihood of confusion among consumers as to the origin of the products and services provided by a defendant resulting from the defendant's use of the plaintiff's mark or trade dress, as well as irreparable harm to the plaintiff's interests. *See, e.g., Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379 (5th Cir. 1996).

The Lanham Act prohibits infringement of trademarks and trade dress, as well as false advertising. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209-10 (2000). Defendants have infringed the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® and have falsely advertised Defendants' products and services. Each of these unlawful activities is discussed below.

A.    Plaintiffs Will Likely Succeed on the Merits of Their Trademark Infringement Claim.

The Lanham Act provides that anyone who "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" shall be liable for trademark infringement. 15 U.S.C. § 1114(1)(a). Thus, a defendant is liable for trademark infringement if: (1) the plaintiff owns a registered trademark, and (2) defendant's imitation of plaintiff's registered mark "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a); *Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500, 504 (5th Cir. 1980).

1.     Plaintiffs Own Valid, Incontestable Registrations for Their Trademarks

The Lanham Act provides for the registration of trademarks, namely "any word, name, symbol, or device, or any combination thereof [used or intended to be used] to identify and distinguish [a producer's] goods . . . from those manufactured or sold by others and to indicate the source of the goods . . . ." 15 U.S.C. § 1127. "Registration of a mark under § 2 of the [Lanham] Act, 15 U.S.C. § 1052, . . . entitles the owner to a presumption that its mark is valid, *see* § 7(b), 15 U.S.C. § 1057(b), and ordinarily renders the registered mark incontestable after five years of continuous use, *see* § 15, 15 U.S.C. § 1065." *Wal-Mart Stores*, 529 U.S. at 209. "[I]ncontestability is and remains the highest status of trademark protection known to federal law." GILSON, J., TRADEMARK PROTECTION & PRACTICE § 4.03 (Rel. 53, 2004).  An incontestable registration is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b).

TMW registered THE MEN'S WEARHOUSE for use with clothing and jewelry, in 1989 and 2000, respectively.  TMW also registered THE MEN'S WEARHOUSE for use as a service mark in 1992. (Maxwell Decl., ¶ 3 & Ex. A.)  TMW complied with 15 U.S.C. § 1065 and in 1989 submitted a statement of continuous use to the United States Patent and Trademark Office. (*Id.,* Ex. A.)  Therefore, the TMW Marks are incontestable.  The incontestable status of the TMW Marks conclusively establish that TMW owns a valid, registered mark.  15 U.S.C. § 1115(b).

Starbucks owns approximately 60 trademark registrations issued by the United States Patent and Trademark Office for marks consisting of or incorporating the Starbucks Mark and the Siren Logo®.  Starbucks obtained its first trademark registration in 1985, and many of the registrations are now deemed incontestable. (Brewer Decl., ¶ 5, Ex. B.)

14

2.     Defendants' Use of Plaintiffs' Trademarks Is Likely Infringing.

Having established that they own registered trademarks, Plaintiffs must then show that Defendants' use of that mark is likely to cause confusion among consumers, or members of the public that might observe the goods so labeled, as to the source, affiliation or sponsorship of the goods. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000); *Pebble Beach Co. v. Tour 18 I*, 155 F.3d 526, 536 (5th Cir. 1998).

Courts may consider the following factors in determining whether a likelihood of confusion exists:

a.     The type of mark allegedly infringed;

b.     The similarity between the two marks;

c.     The similarity of the products or services;

d.     The identity of retail outlets and purchasers;

e.     The identity of the advertising media used;

f.     The defendant's intent; and

g.     Any evidence of actual confusion.

*Westchester Media*, 214 F.3d at 664; *Pebble Beach Co. v. Tour 18 I*, 155 F.3d at 543; *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). "No single factor is dispositive, and a finding of a likelihood of confusion does not require a positive finding on a majority of [the factors]." *Westchester Media*, 214 F.3d at 664 (internal quotations omitted).  Because these factors weigh heavily in favor of a likelihood of confusion, Defendants' use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® likely constitutes infringement.

b.     Type of Mark Allegedly Infringed.

The TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® are particularly strong marks, as they are both famous and distinctive. (Maxwell Decl., ¶¶ 7-8, 10,

12.) (Brewer Decl., ¶¶ 5-18, Ex. A.)  They are also incontestable under 15 U.S.C. § 1065 and §

1115(b).  (Maxwell Decl., ¶ 3, Ex. A.) (Brewer Decl., ¶ 5, Ex. B.)  Therefore, this factor weighs

heavily in favor of injunctive relief.

c.      <u>Similarity Between the Two Marks.</u>

It is undisputed that Defendants are using identical copies of the TMW Marks, the

Starbucks Mark and the Siren Logo® and a virtually identical depiction of the TMW Trade Dress

in its email and Internet promotions.  (*See* Maxwell Decl., Ex. E, ¶ 26.) (Brewer Decl., Exs. B, C,

F.)  This strongly supports the issuance of an injunction.

d.      <u>Similarity of the Products or Services.</u>

Exclusive Gift Cards uses the TMW Marks, the TMW Trade Dress, the Starbucks Mark

and the Siren Logo® in connection with its mail and Web site promotion for the sale of

purportedly "free" gift cards for Plaintiffs' products and services.  Obviously, Plaintiffs offer for

sale their own products and services, and offer gift cards for them, via similar channels of

distribution as Exclusive Gift Cards, *e.g.,* Internet Web sites.  Thus, Defendants purport to offer

the identical products sold by Plaintiffs.  (Maxwell Decl., ¶¶ 19, 21-22.) (Brewer Decl., ¶¶ 13-

14.)

e.      <u>Identity of Retail Outlets and Purchasers.</u>

Exclusive Gift Cards purports to offer gift cards over the Internet via various Web sites,

including but not limited to <exclusivegiftcards.com>.  Similarly, TMW sells its gift cards over

the Internet on its official Web site, <menswearhouse.com> and two other authorized sites,

<giftcertificates.com> and <incentone.com>.  Gift cards for THE MEN'S WEARHOUSE are

also available to consumers at TMW's retail locations. (Maxwell Decl., ¶ 9.)  Likewise,

Starbucks offers its Starbucks Cards for sale to the public through a variety of channels including

but not limited to Starbucks-owned retail facilities, Starbucks' Web site <starbucks.com> and

authorized Web sites such as <Shutterfly.com>, <sendoutcards.com> and <touchpoint.com>. Each of these channels of distribution is authorized by Starbucks and is in strict compliance with Starbucks' policies regarding distribution of Starbucks Cards. (Brewer Decl., ¶ 14.) As such, the channels of distribution are identical.

     f.  Identity of the Advertising Media Used.

  Exclusive Gift Cards uses numerous Web sites and mass distribution emails to advertise its products, including those advertisements which contain the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo®. Plaintiffs use many different types of media to advertise the products and services they sell under the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo®, including but not limited to their Internet Web sites, <menswearhouse.com> and <starbucks.com>, email, and authorized third-party Web sites. (Maxwell Decl., ¶¶ 6, 9.) (Brewer Decl., ¶ 14.) As such, there is a significant overlap in the advertising media used by Defendants and Plaintiffs.

     g.  Defendants' Intent.

  This factor weighs most heavily in favor of relief, because Exclusive Gift Cards' repeated and prominent use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® is a clear attempt to trade on Plaintiffs' good will. Plaintiffs have spent decades building the goodwill that consumers associate with the products and services sold under the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo®. (Maxwell Decl., ¶ 17.) (Brewer Decl., ¶¶ 5-6.) They have spent millions of dollars over the years to advertise and promote the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo®. (Maxwell Decl., ¶ 13.) (Brewer Decl., ¶ 17.) Against that background, there can be no question that Exclusive Gift Cards' use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark

and the Siren Logo® was done with the intent to unlawfully trade upon Plaintiffs' strong brand identity and goodwill.

> h.      Evidence of Actual Confusion.

Evidence of actual confusion is not necessary to support a finding of likelihood of confusion. "While '[e]vidence that the use of the two marks has already led to confusion is persuasive proof that future confusion is likely,' the converse is not true." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000); *see also World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971); *Frostie Co. v. Dr. Pepper Co.*, 341 F.2d 363, 366 (5th Cir. 1965). This is particularly true where, as here, Plaintiffs have not had the opportunity to conduct discovery to determine whether Defendants have possession, custody or control of evidence of actual confusion.

Nevertheless, Defendants' use of exact copies of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® on its Web sites and in email promotions suggests strongly that consumers will be confused and mistakenly purchase gift cards from Defendants under the mistaken belief that Plaintiffs are associated with them or sponsored, endorsed, or approved such promotions.

In response to Plaintiffs' cease and desist letters, Defendants have claimed that consumers would not be confused by their admitted use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® because of the appearance of fine print disclaimers on Defendants' Web sites and promotional emails. (Maxwell Decl., Ex. E, ¶ 25.) (Brewer Decl., ¶ 24, Exs. F-I.). This is incorrect. First, Defendants' copying of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® is so dramatic, taking up the lion's share of the real estate on their advertisement for "THE MEN'S WEARHOUSE" and "Starbucks®" gift card promotions, that a consumer would likely not even notice the disclaimer.

This is particularly true given the short amount of time a consumer would typically spend reading the fine print on a Web site filled almost entirely with pictures, as is the case here. Second, Defendants' inconspicuous disclaimer on their Web sites and email promotions does not cure the likely confusion that will occur as a result of its copying of the trademarks, copyrights and trade dress of Plaintiffs. Indeed, it is difficult for a "junior user to prove that a disclaimer dispels a likelihood of confusion that would, without the disclaimer, trigger an injunction." 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 23.51 (4th ed. 2005). "Clearly, use of a relatively inconspicuous disclaimer will not prevent likely confusion." *Id.* This is because disclaimers send conflicting messages to consumers – the infringing mark indicates that a product comes from one source while the disclaimer says there is no connection with that source. *Id.* These contradictory messages may serve to increase, rather than alleviate, consumer confusion. *Id.*

        3.     Defendants' Use of Plaintiffs' Trademarks Is Not a Fair Use

Despite Exclusive Gift Cards' counsel's claim to the contrary, Defendants' use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® is not a "nominative fair use."

The repeated and prominent use of another's trademarks in a commercial setting is not fair use. *Pebble Beach Co. v. Tour 18 I*, 155 F.3d at 546 (defendant's advertisements for golf course replicating famous holes located on plaintiff's golf course held to infringe plaintiff's mark and not constitute nominative fair use where mark and design were featured so prominently in defendant's advertising, so as to suggest sponsorship or approval by plaintiff); *Kinetic Concepts, Inc. v. BlueSky Medical Group, Inc.*, 2005 U.S. Dist. LEXIS 32353 (W.D. Tex. Nov. 1, 2005) (use of plaintiff's mark twice in advertising slogan and as Internet keyword link to its Web site did not constitute fair use, but rather, was associational, infringing use); *World Impressions, Inc.*

*v. McDonald's Corp.*, 235 F. Supp. 2d 831, 843 (N.D. Ill. 2002) (fair use defense unavailable to plaintiff who used own mark in conjunction with Disney marks, because it implied that Disney sponsored or endorsed product).

Exclusive Gift Cards' use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® goes well beyond mere fair use. In fact, the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® are so prominently and repeatedly displayed on Defendants' promotional emails and Web sites, that there is a substantial likelihood that consumers would mistakenly believe that Plaintiffs sponsored or endorsed Defendants' promotions. In fact, the only reason Defendants use the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® as prominently as they do is to lure consumers into accepting Defendants' offer under the mistaken impression that Plaintiffs were affiliated with it or had endorsed it. Such use is not reasonably necessary to identify Defendants' product and, therefore, does not constitute fair use.

Accordingly, the relief requested herein is necessary to maintain the status quo, and Plaintiffs will be irreparably harmed if such relief is not granted.

B.   TMW is Likely to Succeed on the Merits of Its Trade Dress Infringement Claim.

It is well established that trade dress can be protected under federal law. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000). Trade dress is comprised of the "image and overall appearance of a product," *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1350 (5th Cir. 1994), "and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992). Trade dress also encompasses the overall appearance of a product's packaging. *Id.; Urgent Gear Inc v. Savoia*, 2001 U.S. Dist. LEXIS 20459, at *7 (N.D. Tex. Dec. 10, 2001) (same).

Trade dress qualifies for protection if it is inherently distinctive or if the plaintiff proves acquired distinctiveness. *Two Pesos*, 505 U.S. at 769. "Trade dress is inherently distinctive when it identifies the particular source of the product or distinguishes it from other products." *Urgent Gear*, 2001 U.S. Dist. LEXIS 20459, at *7. Each feature of the trade dress need not be unique, but rather, "it is the combination of elements and the total impression that the dress gives to the observer that should be the focus of a court's analysis of distinctiveness." *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993); *Taco Cabana Int'l v. Two Pesos, Inc.*, 932 F.2d 1113, 1120 (5th Cir. 1991) ("the law protects the distinctive totality"), *aff'd*, 505 U.S. 763 (1992).

Trade dress is classified on a continuum of increasing distinctiveness as generic, descriptive, suggestive or arbitrary. *Two Pesos*, 505 U.S. at 768-69. If the trade dress as a whole is determined to be arbitrary or suggestive, the trade dress is inherently distinctive, despite the incorporation of generic or functional elements. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31-32 (2d Cir. 1995); *see also McNeil-PPC, Inc. v. Merisant Co.*, 2004 U.S. Dist. LEXIS 27733, at *14-18 (D. P.R. July 29, 2004) (inherent distinctiveness found because overall combination of elements was arbitrary or at least suggestive of nature of product, and not merely descriptive).

If the trade dress is found to be merely descriptive, rather than arbitrary or suggestive, the trade dress may still be distinctive if it has acquired secondary meaning: *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001).

Here, the specific elements of the TMW Trade Dress illustrate the unique and distinctive qualities of both the individual elements of such trade dress and of its ultimate overall appearance. These individual elements, and their appearance as a whole, distinguish TMW's

products and services from similar products of other companies.  Accordingly, the TMW Trade

Dress is entitled to protection under federal trademark law.

Trade dress infringement occurs when: (1) the trade dress, taken as a whole, is primarily

non-functional; (2) the trade dress is inherently distinctive or has acquired secondary meaning;

and (3) the alleged infringement creates a likelihood of confusion.  *Engineering Dynamics*, 26

F.3d at 1350.  All three elements are present here.

1.    The TMW Trade Dress Is Non-Functional.

A product feature is functional if its exclusive use "'would put competitors at a

significant non-reputation-related disadvantage.'"  *TrafFix*, 532 U.S. at 32 (quoting *Qualitex Co.*

*v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)).  In other words, a feature is functional "if it

is essential to the use or purpose of the article or if it affects the cost or quality of the article."  *Id.*

(quotations omitted).  In this case, the elements of the TMW Trade Dress that Exclusive Gift

Cards has copied do not serve any function other than to identify the source of TMW's products

and services.  Thus, the TMW Trade Dress is non-functional.

2.    The TMW Trade Dress Is Inherently Distinctive or Has Acquired
      Distinctiveness.

That the TMW Trade Dress is inherently distinctive or has acquired secondary meaning

may be presumed by a showing that Exclusive Gift Cards has copied the TMW Trade Dress,

because "there is no logical reason for the precise copying save an attempt to realize upon a

secondary meaning that is in existence."  *Berg v. Symons*, 393 F. Supp. 2d 525, 554 (S.D. Tex.

2005) (quoting *Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts*, 944 F.2d 1235,

1239 (6th Cir. 1991)).  TMW will be able to show that Exclusive Gift Cards has copied the

TMW Trade Dress in striking detail -- not only its individual elements, but the specific

combination of those elements -- indisputably intending to capitalize on TMW's good will.  This

copying not only confuses the public but also provides a presumption that the TMW Trade Dress is inherently distinctive or has acquired secondary meaning. *Id.*

Thus, the TMW Trade Dress supports a claim of trade dress infringement.

3.      Defendants' Infringement Creates a Likelihood of Confusion.

As discussed above, the Fifth Circuit has identified seven factors that courts may use in determining whether a likelihood of confusion exists.  The determinative question is whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way, *Elvis Presley Enters.*, 141 F.3d at 194, or whether the public believes that the mark's owner sponsored or otherwise approved the use of the trademark.  *Id.* at 193; *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d at 663 (infringement exists when there is a "likelihood of confusion in the minds of potential consumers as to the 'source, affiliation, or sponsorship' of [the product]").

The TMW Trade Dress is well known and inherently distinctive or, alternatively, has acquired secondary meaning.  Exclusive Gift Cards is using nearly identical trade dress on its Web sites.  The products of TMW and Exclusive Gift Cards are promoted on the Internet on the parties' respective Web sites and via email, and both TMW and Exclusive Gift Cards offer gift certificates for THE MEN'S WEARHOUSE products and services.

As with Exclusive Gift Cards' copying of the TMW Marks, most damning is the factor relating to Exclusive Gift Cards' intent.  TMW has developed distinctive, non-functional trade dress to identify its products and services.  Exclusive Gift Cards' slavish copying of the TMW Trade Dress evidences its intent to capitalize on the brand name recognition  and goodwill associated with the TMW Trade Dress.  This will undoubtedly lead to consumer confusion.

Accordingly, TMW is likely to succeed on the merits of its trade dress infringement claim.

C.   Plaintiffs Are Likely to Succeed on the Merits of Their False Advertising Claim.

A *prima facie* case of false advertising under Section 43(a) of the Lanham Act requires the plaintiff to establish:

a)   a false or misleading statement of fact about a product;

b)   such statement either deceived, or had the capacity to deceive, a substantial segment of potential consumers;

c)   the deception is material, in that it is likely to influence the consumer's purchase decision;

d)   the product is in interstate commerce; and

e)   the plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000), *cert. denied*, 532 U.S. 920 (2001).  To obtain injunctive relief, the plaintiff need show merely that the advertising has "a tendency to deceive consumers." *Id.* at. 497.  Literally false statements, as opposed to mere misleading statements, are presumed to deceive consumers and the plaintiff need not present further evidence of deception or materiality.  *Id.*

The statements on Exclusive Gift Cards' and the John Doe Defendants' Web sites and email promotions that the gift cards they offer are purportedly "free" and that consumers will receive a gift card upon completion of Defendants' requirements are patently false.  Defendants' Web sites and email promotions are also false, or at the very least misleading, because their prominent and repeated use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® falsely indicates Plaintiffs as having endorsed, sponsored or authorized them.

These false statements are inherently injurious to Plaintiffs, as they are calculated to induce consumers to participate in Defendants' gift card promotions based on the false promise that the gift cards are free, that the consumer will actually receive a gift card, and that the

promotion was endorsed or authorized by Plaintiffs.  Defendants' advertisements are also false or

misleading because Defendants do not actually have the gift cards at the time that the offer is

made.  According to counsel for Exclusive Gift Cards, it does not actually come into possession

of any THE MEN'S WEARHOUSE gift cards, "Starbucks® Gift Cards" or any other gift cards,

until such time as a consumer responds that it would like such a card, and completes Exclusive

Gift Cards' onerous program requirements to its subjective satisfaction.  (Maxwell Decl., Ex. E,

¶ 26.)  The injury caused by, and that will continue to be caused by, Defendants' false and

misleading statements warrants the issuance of a preliminary injunction.

   D.    Plaintiffs Are Likely to Succeed on the Merits of Their Federal Unfair
         Competition Claim (False Designation of Origin)

   Section 43(a) of the Lanham Act also prohibits the false designation of the origin or

source of a product or service.  *Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir. 1990).  False

representations of the source of a product, also known as "palming off," constitute unfair

competition.  Palming off is defined as "selling one's goods under the name of a competitor."

*Roho, Inc.*, 902 F.2d at 359.  "The relevant inquiry is whether, under the circumstances of the

use, the marks are sufficiently similar that prospective purchasers are likely to believe that the

two users are somehow associated."  *Elvis Presley Enters.*, 141 F.3d at 201.

   The standard of proof needed to prevail on a claim for false designation of origin is also a

showing of likelihood of confusion.  *Two Pesos*, 505 U.S. at 780.  A demonstration that the false

representations have a tendency to deceive the consumer is sufficient to warrant injunctive relief.

*Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th

Cir.), *cert. denied*, 423 U.S. 868 (1975).  Thus, plaintiff must show "only a likelihood of

confusion" to obtain equitable relief, under the same seven factors discussed above.

Accordingly, for the reasons set forth in Section B above, Plaintiffs are likely to succeed on the merits of their federal unfair competition claim.

## II.    THE EQUITIES FAVOR PLAINTIFFS.

### A.    Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief.

The equities favor Plaintiffs, since their goodwill and reputations are at stake, as well as their ability to control the products and services offered under the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo®. Defendants could not possibly show any harm resulting from being precluded from copying Plaintiffs' marks, copyrights and trade dress or advertising gift cards for Plaintiffs' products and services.

"A showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm." *Chemlawn Servs. Corp. v. GNC Pumps, Inc.,* 690 F. Supp. 1560, 1569 (S.D. Tex. 1988). Plaintiffs have clearly established that Defendants' use of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® in connection with their promotions and advertisements is likely to cause confusion among consumers. It would be impossible, at reasonable expense, to fully identify and prove the monetary damage to the goodwill of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® if Defendants are permitted to sell their products and services under the same marks and confusingly similar trade dress. Plaintiffs have been irreparably harmed and will continue to be irreparably harmed if Defendants succeed in confusing consumers as to the source of their products and actually distribute any cards labeled with the TMW Marks, the Starbucks Mark and/or the Siren Logo®. Justice demands that Defendants' infringing conduct be halted immediately to preserve the status quo.

Plaintiffs have invested millions of dollars in developing goodwill in the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo®. (Maxwell Decl., ¶ 13.)

(Brewer Decl., ¶ 17.)  Plaintiffs have sold their products and services under the TMW Marks, the Starbucks Mark and the Siren Logo® for decades and under the TMW Trade Dress for years. (Maxwell Decl., ¶ 8.) (Brewer Decl., ¶ 5.)  If Defendants are not enjoined immediately from unfairly competing with Plaintiffs, the commercial significance of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® will be irreparably undermined.

Here, since a likelihood of confusion has been established (and may in fact be presumed from Exclusive Gift Cards' slavish copying), the risk of irreparable harm needed to support an injunction is presumed.  Irreparable harm may also be presumed from Plaintiffs' financial interest in the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® which has been incurred in the promotion of those marks.  Indeed, in trademark cases, an "injunction is almost routinely issued when infringement is shown." DAN B. DOBBS, DOBBS LAW OF REMEDIES, § 6.4(5), at 95 (2d ed. 1993).

Even without a presumption of irreparable harm based on a likelihood of confusion, if Defendants are allowed to continue advertising and offering their products using the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo®, Plaintiffs will suffer irreparable harm.  Consumers are likely to associate Defendants' products with Plaintiffs' products and services, even though Plaintiffs have absolutely no control over the nature or quality of Defendants' products.  Plaintiffs' reputation and goodwill as symbolized in the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo® will be removed from Plaintiffs' control and placed in the hands of Defendants.

This is especially troubling when one takes into account the fact that Defendants' Web sites and promotional offers contain the false statement that they offer "free" gift cards, when, in fact, they are not free.  A consumer who seeks a gift card from Defendants must spend his money

and valuable time, before he can even apply for a "free" gift card.  Meanwhile, Defendants obtain all of that consumer's personal information, his responses to lengthy questionnaires, and various fees to participate in other promotions completely unrelated to the gift card, before the consumer is even contacted about whether he has, in the subjective judgment of Defendants, sufficiently satisfied their numerous "program requirements" to obtain his "not so free" gift card. To make matters worse, even after the consumer completes Defendants' onerous program requirements, it is unlikely that he will ever receive a gift card from Defendants.  (Maxwell Decl., ¶ 18.)  Thus, it seems probable that the typical consumer's reaction to Defendants' falsely advertised promotional offers would be one of annoyance, aggravation and disappointment.  By unlawfully using Plaintiffs' registered trademarks and distinctive trade dress in the process, and confusing the public into believing that Plaintiffs sponsored or authorized Defendants' false offers, such feelings of annoyance, aggravation and disappointment could, improperly and irreparably, be directed to Plaintiffs.

Therefore, the balance of hardships weighs heavily in favor of Plaintiffs.  Defendants should be preliminarily enjoined from continuing to infringe the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo®.

B.    No Cognizable Harm to Defendants Will Result from Granting Preliminary Injunctive Relief.

If the plaintiff can show a likelihood of success, "the 'harm to others' factor of the preliminary injunction standard would normally favor the plaintiff as well." *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1462 (S.D. Ohio 1990).  Harm caused to apparent infringers, such as lost profits, "is not entitled to consideration in assessing the harm caused by an injunction" and "[a] party who willfully proceeds to expend funds on infringing activities cannot claim the loss of those funds as a ground for denying preliminary injunctive relief." *Id.* at

1461-62. Here, a preliminary injunction will not cause cognizable harm to Exclusive Gift Cards, since it need merely redesign the appearance of its Web sites and promotional offers to delete any references to the TMW Marks, the Starbucks Mark, the Siren Logo®, elements of the TMW Trade Dress and gift cards for Plaintiffs' products and services. Furthermore, any costs Exclusive Gift Cards may incur were the injunction to issue wrongly are easily quantifiable and can be redressed monetarily.

> C.     The Public Interest Favors the Grant of Injunctive Relief.

It is in the public interest to avoid consumer confusion. *See Freddie Fuddruckers, Inc. v. Ridgeline, Inc.*, 589 F. Supp. 72, 78 (N.D. Tex. 1984), *aff'd*, 783 F.2d 1062 (5th Cir. 1986); *see also Scientific Applications, Inc. v. Energy Conservation Corp.*, 436 F. Supp. 354, 363 (N.D. Ga. 1977) ("The public interest . . . is found to be served by the grant of a preliminary injunction when . . . it prevents further trademark infringement and resulting consumer confusion."). In a case such as this, the public interest would be harmed if the preliminary injunction is ***not*** granted.

Since consumer confusion is likely as a result of Defendants' slavish copying of the TMW Marks, the TMW Trade Dress, the Starbucks Mark and the Siren Logo®, protecting the public interest clearly favors granting the requested injunctive relief.

## CONCLUSION

Plaintiffs have demonstrated a likelihood of success on the merits of their claims, that they will suffer irreparable injury in the absence of a preliminary injunction, that the balancing of interests weighs heavily in favor of granting a preliminary injunction, and that the public interest will be harmed if Plaintiffs are not granted a preliminary injunction. Thus, a preliminary injunction should be granted to stop Defendants' activities until a full trial on the merits can be held.

Dated: May 31, 2006

FULBRIGHT & JAWORSKI L.L.P.

John M. Mings
Southern District Admission No. 12374
Texas State Bar No. 14176900
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

Attorney for Plaintiffs' The Men's Wearhouse,
Inc., TMW Marketing Company, Inc., Starbucks
Corporation; and Starbucks U.S. Brands L.L.C.

OF COUNSEL:
Fulbright & Jaworski L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

31101092.3

30